# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**STONE MOUNTAIN ACCESS SYSTEMS, INC.**  PLAINTIFF

v.  CIVIL NO. 1:16cv194-HSO-RHW

**SOUTHERN RECYCLING, LLC,
JOHN DOES 1 THROUGH 30, AND
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA**  DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SOUTHERN RECYCLING, LLC'S MOTION [161] FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF STONE MOUNTAIN ACCESS SYSTEMS, INC.'S SECOND MOTION [165] FOR SUMMARY JUDGMENT

BEFORE THE COURT are Defendant Southern Recycling, LLC's Motion [161] for Summary Judgment and Plaintiff Stone Mountain Access Systems, Inc.'s Second Motion [165] for Summary Judgment. These Motions are fully briefed. After review of the Motions, the Responses, the related pleadings, the record as a whole, and relevant legal authority, the Court finds that Defendant Southern Recycling, LLC's Motion [161] should be granted in part as to Plaintiff's negligence per se claim, and denied in part as to Plaintiff's claims for negligence, conversion, and punitive damages/gross negligence. Plaintiff's Second Motion [165] for Partial Summary Judgement on the issue of negligence per se should be denied.

## I. BACKGROUND

A.  Facts and Relevant Procedural History

This matter arises out of a dispute surrounding Defendant Southern Recycling, LLC's ("Southern Recycling") purchase of metal scaffolding that had

previously been in the inventory of Plaintiff Stone Mountain Access Systems, Inc. ("Plaintiff"). Compl. [1-2] at 4. Plaintiff Stone Mountain is a corporation "engaged in the business of leasing metal scaffolding, access systems, and other hardware and equipment," Am. Compl. [39] at 2, while Southern Recycling is a company that "buys scrap metal for the purpose of recycling," Def. Mem. in Supp. Summ. J. [162] at 3.

On May 17, 2016, Plaintiff filed a Complaint in the Circuit Court of Harrison County, Mississippi, First Judicial District, against Defendants Southern Recycling, Letroy Deandre Brooks ("Brooks"), Darryl Maurice Raymond ("Raymond"), and John Doe Defendants. Plaintiff alleged that from January 2013 through January 2015, its former employees, Brooks and Raymond, engaged in a scheme with Southern Recycling wherein Brooks and Raymond would take Plaintiff's scaffolding without Plaintiff's "authority or consent," and sell it as scrap metal to Southern Recycling for cash. *Id*. at 5-6. Plaintiff asserted that through over 50 transactions, Southern Recycling purchased more than 134,000 pounds of scaffolding "at a fraction of its then current market value as material usable for its original economic purpose." *Id*. at 6. The Complaint advanced claims for negligence, negligence per se, negligent receipt of stolen or embezzled property, conversion, and gross negligence, *id*. at 7-11, and sought damages in excess of $250,000.00, plus punitive damages, costs, and attorneys' fees, *id*. at 11.

Southern Recycling removed the case to this Court on June 7, 2016, invoking diversity jurisdiction. Notice of Removal [1] at 1-3. On June 28, 2016, Plaintiff filed

a Motion [9] to Remand on grounds that diversity jurisdiction was lacking because Plaintiff as well as Defendants Brooks and Raymond were all citizens of Mississippi. The Court entered an Order [17] on October 25, 2016, denying remand and dismissing Brooks and Raymond, finding that they were not proper parties to defeat diversity jurisdiction because the record reflected that Plaintiff did not intend to actually pursue claims against them in this case. Order [17] at 1-9.

On December 13, 2016, Plaintiff filed an Amended Complaint [39] advancing claims against Southern Recycling and Defendant Travelers Property Casualty Company of America ("Travelers") for: (1) negligence; (2) negligence per se; (3) negligent receipt of stolen or embezzled property; (3) conversion; (4) gross negligence; (5) negligent hiring, supervision, training, control, and retention; (6) seeking a declaration of coverage by Travelers; and (7) bad faith breach of contract by Travelers. Am. Compl. [39] at 5-14. The Amended Complaint seeks damages in excess of $250,000.00, plus punitive damages, costs, and attorneys' fees. *Id*. at 14. By Agreed Order [138] dated July 25, 2017, Travelers was dismissed.

B.  Southern Recycling's Motion [161] for Summary Judgment

Southern Recycling's Motion [161], filed on October 27, 2017, contends that summary judgment is proper because Plaintiff has "presented only speculative and unsubstantiated evidence of its claimed damages." Mot. Summ. J. [161] at 1. In the alternative, Southern Recycling asserts that partial summary judgment is appropriate on Plaintiff's claims for conversion, negligence per se, and punitive

damages/gross negligence, as Plaintiff has produced insufficient evidence to support these claims. *Id.*

Plaintiff's Response [171] maintains that sufficient evidence was produced and that all claims should be allowed to advance to trial. Resp. in Opp'n [171] at 1. Plaintiff argues that it has evidence that it suffered damages of at least $18,872.87, which is the amount Defendant paid as the scrap metal value of Plaintiff's stolen scaffolding. Mem. [172] at 2. Plaintiff further asserts that some of its "equipment was comprised of aluminum tubes, bars, and rods" and that some materials "were used in the maintenance of railroads, [and] were used to construct communication and power distribution towers and facilities" all of which fall within the class of regulated metals set forth in Mississippi's scrap metal statute, Mississippi Code § 97-17-71. *Id.* at 3.

C.  Plaintiff's Second Motion [165] for Partial Summary Judgment

On November 2, 2017, Plaintiff filed its Second Motion [165] for Partial Summary Judgment on its claim of negligence per se. Mot. [165] at 1-2. Plaintiff posits that Southern Recycling failed to comply with the mandatory requirements of Mississippi Code § 97-17-71 by not keeping accurate records and by paying cash for the scaffolding, which proximately caused Plaintiff's damages. Mem. [166] at 1-2, 14. Plaintiff maintains that Southern Recycling also failed to adhere to requirements placed upon scrap metal dealers under "City of Gulfport Ordinance No. 2560, § 3, 10-16-07." *Id.* at 10-12.

4

In its Response [182], Southern Recycling contends that because the Amended Complaint [39] did not allege a violation of the City of Gulfport's Ordinance, Plaintiff cannot rely on it to support a negligence per se claim. Mem [183] at 11-12. Further, Southern Recycling takes the position that the purchases of scaffolding did not fall within the reporting requirements for "metal property" as set forth in Mississippi's scrap metal statute. *Id.* at 6-17.

## II. DISCUSSION

A. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497

U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). An actual controversy exists "when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

B.  Mississippi Code § 97-17-71

The gravamen of this dispute is that over the course of two years, two of Plaintiff's former employees removed scaffolding and other miscellaneous materials and took them to Southern Recycling to sell as scrap metal. Southern Recycling purchased the scaffolding and materials and remitted payment to the former employees in cash. Although it is undisputed that Southern Recycling paid in cash, a genuine issue of material fact does exist as to whether the items were actually stolen from Plaintiff, and, if so, whether Southern Recycling knew or should have known they were stolen. Since the Court cannot make a factual determination as to whether the materials were stolen, it likewise cannot address the parties' legal

arguments unless that factual dispute is not material to resolution of the legal issues advanced in the parties' competing summary judgment motions.

A review of Mississippi Code § 97-17-71 reflects that a number of its provisions apply to materials purchased by a scrap dealer whether those materials were stolen or not. *See Metal Mgmt. Miss. v. Barbour,* No. 3:08cv431, 2008 WL 3842979, at *1-2 (S.D. Miss. 2008) (finding that this statute requires certain acts to be performed by scrap metal dealers to deter metal theft).

Specifically, Mississippi Code § 97-17-71(2) requires that a scrap metal dealer or other purchaser shall, for a period of two years, keep an accurate and legible record containing the following information for each purchase transaction:

(a) The name, address and age of the person from whom the metal property is purchased as obtained from the seller's personal identification card;

(b) The date and place of each acquisition of the metal property;

(c) The weight, quantity or volume and a general physical description of the type of metal property, such as wire, tubing, extrusions or casting, purchased in a purchase transaction;

(d) The amount of consideration given in a purchase transaction for the metal property;

(e) The vehicle license tag number, state of issue and the make and type of the vehicle used to deliver the metal property to the purchaser;

(f) If a person other than the seller delivers the metal property to the purchaser, the name, address and age of the person who delivers the metal property;

(g) A signed statement from the person receiving consideration in the purchase transaction stating that he is the rightful owner of the metal property or is entitled to sell the metal property being sold;

(h) (i) A scanned copy or a photocopy of the personal identification card of the person receiving consideration in the purchase transaction; or (ii) If a person other than the seller delivers the metal property to the purchaser, a scanned copy or a photocopy of the personal

7

> identification card of the person delivering the metal property to the purchaser; and
>
> (i) A photograph, videotape or similar likeness of the person receiving consideration or any person other than the seller who delivers the metal property to the purchaser in which the person's facial features are clearly visible and in which the metal property the person is selling or delivering is clearly visible.
> Such records shall be maintained by the scrap metal dealer or purchaser for not less than two (2) years from the date of the purchase transaction, and such records shall be made available to any law enforcement officer during usual and customary business hours.

MISS. CODE ANN. § 97-17-71(2).

Additional conditions are placed upon scrap metal dealers when they purchase "metal property" as defined by § 97-17-71. These additional conditions include, in relevant part: (1) maintaining the material as separate and identifiable for a period of not less than three days, § 97-17-71(3); and (2) remitting payment for the material by check or electronic transfer and not cash, no sooner than three days following the purchase, § 97-17-71(8).

> "Metal property" means materials as defined in this section as railroad track materials, copper materials and aluminum materials and electrical, communications or utility brass, metal covers for service access and entrances to sewers and storm drains, metal bridge pilings, irrigation wiring and other metal property attached to or part of center pivots, grain bins, stainless steel sinks, catalytic converters not attached to a motor vehicle and metal beer kegs. Metal property does not include ferrous materials not listed in this section.

MISS. CODE ANN.§ 97-17-71(1)(e). "Railroad [track] materials" are further defined as "any materials, equipment and parts used in the construction, operation, protection and maintenance of a railroad." MISS. CODE ANN. § 97-17-71(1)(a). "Aluminum materials" are "any aluminum cable, bars, rods or tubing of the type

8

used to construct utility, communication or broadcasting towers, aluminum utility wire and aluminum irrigation pipes or tubing." MISS. CODE ANN. § 97-17-71(1)(c).

B. <u>Southern Recycling's Motion [161] for Summary Judgment should be granted in part as to Plaintiff's claim for negligence per se, and denied in part as to the claims for negligence, conversion, and punitive damages/gross negligence.</u>

1. <u>Plaintiff's damages claims</u>

Southern Recycling's Motion [161] seeks summary judgment on the theory that Plaintiff cannot prove with any certainty the damages it allegedly incurred due to Southern Recycling's purchase of scaffolding and other materials from Plaintiff's former employees. A review of the record reflects that Southern Recycling itself valued the scaffolding and other materials it purchased from Plaintiff's former employees at $18,872.87 and remitted this amount to them in cash. Therefore, the Court finds that Plaintiff has produced sufficient competent summary judgment proof to establish that, at a minimum, it may be able to recover $18,872.87 in actual damages at trial. Summary judgment should be denied on this issue.

2. <u>Plaintiff's negligence claims</u>

In Mississippi, the elements of a negligence claim are: (1) duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) damages; and (4) proximate cause. *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.,* 519 So. 2d 413, 416 (Miss.1988). Southern Recycling did not address each of these elements in its Motion, but focused its argument on the damages element and maintained that summary judgment was appropriate because Plaintiffs had failed to produce any non-speculative evidence of damages.

9

Plaintiff responded with competent probative evidence that damages in the amount of at least $18,872.87 may be proven at trial. Viewing the evidence in the light most favorable to Plaintiff as the nonmovant, the Court finds that Plaintiff has produced sufficient evidence to create a material question of fact regarding whether it suffered some damages due to Southern Recycling's alleged conduct. Plaintiff's negligence claims should proceed to trial.

3.  Plaintiff's conversion claims

In Mississippi, "[c]onversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Terrell v. Tschirn,* 656 So. 2d 1150, 1153 (Miss. 1995) (quoting *Walker v. Brown,* 501 So. 2d 358, 361 (Miss.1987)). While the issue of whether Southern Recycling knew that the materials were allegedly stolen presents a question of fact for trial, the intent to exercise control over the allegedly stolen materials "does not have to be the intent to be a wrongdoer." *Id.* (citing *Walker,* 501 So. 2d at 361).

In *Terrell,* the Mississippi Supreme Court held that

> [a] person who purchases or accepts the possession of stolen personal property is often regarded as liable for the conversion thereof. This rule is generally applied where, in addition to the act of purchasing the goods or accepting possession thereof, the defendant appropriates the property or holds it to his own use, or refuses to comply with a demand of the owner to surrender possession, or sells, transfers, or disposes of the goods.

*Terrell,* 656 So. 2d at 1153 (quoting 18 Am.Jur.2d § 36 at 170). *Terrell* points out that good faith is not necessarily a defense.

> The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods

10

> which is in fact inconsistent with the plaintiff's rights. A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since the auctioneer's acts are an interference with the control of the property. A mistake of law is no defense.

*Id.* (quotation omitted).

As the Court has already determined, there exists a relevant issue of material fact as to whether the items sold to Southern Recycling were stolen. Viewing the evidence in the light most favorable to Plaintiff, should the finder of fact determine that at least some of the materials were stolen, it is possible that Southern Recycling may be found to have converted Plaintiff's property.

4.  <u>Plaintiff's negligence per se claim</u>

Under Mississippi law "negligence *per se* is a subset of negligence in general, whether it be contributory, comparative or otherwise. Thus a pleading of negligence . . . would encompass negligence *per se*." *Snapp v. Harrison*, 699 So. 2d 567, 571 (Miss. 1997) (emphasis in original). To support a negligence per se claim premised upon the violation of a statute or an ordinance, a plaintiff must plead and establish that: "(1) the defendant breached a statute or ordinance; (2) the plaintiff was within the class protected by the statute or ordinance; and (3) 'the violation proximately caused his injury.'" *Faul v. Perlman*, 104 So. 3d 148, 156 (Miss. Ct. App. 2012) (quoting *Palmer v. Anderson Infirmary Benevolence Ass'n,* 656 So. 2d 790, 796 (Miss. 1995)).

Plaintiff's Amended Complaint is silent regarding any "negligence per se" claim for violating the City of Gulfport's Ordinance No. 2560, § 3, 10-16-07, nor does the Amended Complaint allege that Plaintiff was within the class protected by the

11

Ordinance, or that Plaintiff's damages were proximately caused by Defendant's alleged violation of the Ordinance. This is wholly insufficient to plead a negligence per se claim based upon the Ordinance and Plaintiff may not now attempt to pursue such a claim at this late stage of the case. The Court finds that Plaintiff did not assert a claim for negligence per se under the Gulfport Ordinance and any such claim should be dismissed. *See Benson v. Rather*, 211 So. 3d 748, 755-56 (Miss. Ct. App. 2016) (finding that plaintiff failed to plead a cause of action that an alleged violation of the International Building Code constituted negligence per se); *Faul,* 104 So. 2d at 156 (finding that trial court properly dismissed negligence per se claim as insufficiently pleaded).

The Amended Complaint did set forth a claim for negligence per se premised upon a violation of Mississippi Code § 97-17-71 and alleged that Plaintiff was within the class to be protected, that Southern Recycling negligently failed to follow the requirements of the statute, and that Plaintiff suffered damages as the proximate result of Southern Recycling's negligence. Southern Recycling does not seriously contend that Plaintiff is not within the class of persons to be protected by the statute, but asserts that the metal materials it purchased were not covered by the statute and that Plaintiff's damages are too speculative. The Court has already addressed the issue of damages, thus Plaintiff's negligence per se claim hinges on whether Plaintiff's property fell within the purview of the scrap metal statute such that Southern Recycling's alleged failure to comply with its requirements proximately caused harm.

Section 97-17-71(2)(a) – (i) sets forth requirements for all purchases of metal materials by a scrap dealer such as Southern Recycling. Based upon a review of the record, Southern Recycling did obtain and maintain information on the purchases of Plaintiff's metal materials including date, place of acquisition, and weight of the materials, and although a few photographs were missing, the descriptions of the materials purchased at each transaction were recorded in compliance with § 97-17-71(2)(b)-(c). *See* Spreadsheet Ex. "A" [161-1] at 1-2; Sales Tickets, Affidavits and Photographs [161-2] at 1-176; Spreadsheet "hidden columns revealed" [165-9] at 1.

The parties do not appear to disagree that two of Plaintiff's former employees, clad in Plaintiff's work uniforms, delivered the materials at issue to Southern Recycling and there is no serious dispute as to the identity of the individuals from whom Southern Recycling purchased the scaffolding. Thus, the Court finds that Plaintiffs have not shown a material fact question for trial as to whether any lapse in Southern Recycling's record keeping or in failing to obtain the personal information of these former employees or information about the vehicle they were driving was a proximate cause of Plaintiff's alleged damages.[1] In other words, Plaintiffs have not shown that any violation by Southern Recycling of § 97-17-71(2)(a)-(i) was the proximate cause of any harm.

---

[1] Plaintiff correctly asserts that § 97-17-71(9) provides that evidence that a scrap metal dealer purchasing "metal property" failed to maintain records or to hold the materials separate for the period of time prescribed, "shall be prima facie evidence that the person receiving the metal property received it knowing it to be stolen in violation of Section 97-17-70." Pl. Mem. in Supp. Summ. J. [166] at 15. However, this provision does not apply to all purchases of scrap metal, only purchases of metals that fall within the definition of "metal property" under § 97-17-71(1)(e).

13

Plaintiff's negligence per se claim thus hinges on its contention that the metal scaffolding and materials purchased by Southern Recycling required Southern Recycling to comply with the additional statutory requirements for purchases of "metal property" as that term is defined by the statute at § 97-17-71(1)(e). The Amended Complaint described Plaintiff's inventory as "metal scaffolding, access systems, and other hardware and equipment." Am. Compl. [39] at 2. Plaintiff's Federal Rule of Civil Procedure 30(b)(6) deposition testimony reflects that the materials purchased by Southern Recycling consisted of generic industrial scaffolding, as follows:

> Q. Fair to say you rent and sell industrial-type equipment?
>
> A. Yes.
>
> Q. Okay. The types of equipment that you sell would be, like, some examples?
>
> A. Modular scaffolding systems, aluminum[,] steel, shoring systems, aluminum and steel, motorized suspended scaffolding, motorized and cable-driven, I should say.
>
> Q. I understand.
>
> A. Those types of equipment is what we deal with.

Rule 30(b)(6) Dep. Pl. [182-1] at 3. Plaintiff further delineated the material in its inventory as generic that could be utilized in "almost every industry."

> . . . Q. Was any of this material that you have determined to have been stolen from Stone Mountain and sold to Southern Recycling specifically designed to be utilized in conjunction with any type of railroad work?
>
> THE WITNESS: Our equipment is used for maintenance in many -- almost every industry, pretty much, that requires access to specific

14

> things that can't be reached by the ground or by people that are just --
> ladders or whatever.
> So to answer that question, it can be used for any of those things, communication towers, railroads, and has been in many cases.

*Id*. at 13.

In order for Plaintiff to invoke the scrap metal statute as a basis for its negligence per se claim, it must demonstrate that its scaffolding met the statute's definition of "metal property," which is defined as

> railroad track materials, copper materials and aluminum materials and electrical, communications or utility brass, metal covers for service access and entrances to sewers and storm drains, metal bridge pilings, irrigation wiring and other metal property attached to or part of center pivots, grain bins, stainless steel sinks, catalytic converters not attached to a motor vehicle and metal beer kegs. Metal property does not include ferrous materials not listed in this section.

MISS. CODE ANN.§ 97-17-71(1)(e). "Railroad [track] materials" are further defined as "any materials, equipment and parts used in the construction, operation, protection and maintenance of a railroad." MISS. CODE ANN. § 97-17-71(1)(a). "Aluminum materials" are "any aluminum cable, bars, rods or tubing of the type used to construct utility, communication or broadcasting towers, aluminum utility wire and aluminum irrigation pipes or tubing." MISS. CODE ANN. § 97-17-71(1)(c).

Plaintiff has cited no authority, and the Court has located none, that would support its theory that its generic scaffolding, whether made from aluminum or not and which can be used in "almost every industry," falls within the statute's definition of railroad track materials, aluminum materials or other categories of

15

"metal property."[2] Even if Plaintiff's aluminum scaffolding may have been incidentally leased or utilized in connection with constructing or maintaining a railroad or a communication tower, to conclude that this would be sufficient to qualify Plaintiff's stolen property as "metal property" would, in the Court's view, stretch the definitions in the statute beyond their logical limits, and permit nearly any kind of material whose use may be incidental to construction, operation, or maintenance of a railroad or communication tower to qualify as metal property, rendering the statutory limitations imposed by the Mississippi Legislature meaningless.

The Court finds that Plaintiff has not pointed the Court to relevant legal authority, nor has it produced sufficient competent summary evidence that would create a genuine dispute of material fact, that the metal scaffolding or other materials Southern Recycling purchased from Plaintiff's former employees fell within the statutory definition of "metal property" set forth in § 97-17-71(1)(e). For these reasons, the additional requirements for purchases of "metal property,"

---

[2] In its Response [171] to Southern Recycling's Motion for Summary Judgment, Plaintiff attaches an Affidavit of Scott Billish [171-5], Plaintiff's President. The Affidavit attempts to redefine the aluminum material in its inventory to fit within the parameters of the statutory definition by alleging that its scaffolding equipment includes "aluminum tubing which is identical to the type and kind of aluminum tubing used for irrigation pipes and tubing." Aff. [171-5] at 1. In the Court's view, this attempted qualification is not sufficient to show that Plaintiff's scaffolding would meet the statutory definition. Moreover, it is inconsistent with Plaintiff's corporate deposition testimony. In the Fifth Circuit the law is clear that a party cannot "manufacture a question of fact on summary judgment by relying on an affidavit which contradicts the nonmovant's prior sworn testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

including maintaining the material as separate and identifiable for a period of not less than three days under § 97-17-71(3), and remitting payment for the material by check or electronic transfer and not cash no sooner than three days following the purchase under § 97-17-71(8), were not triggered.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that it has produced insufficient evidence or legal authority tending to show that its damages were due to Southern Recycling's violation of the scrap metal statute. Plaintiff's negligence per se claim should be dismissed.

### 5. Plaintiff's claims for punitive damages/gross negligence

The Court finds that because conversion is an intentional tort, Southern Recycling's request that Plaintiff's claim for punitive damages/gross negligence be dismissed must be denied at this time, without prejudice to Southern Recycling's right to reurge its position at trial in the event the Court reaches the issue of punitive damages. *See also* January 18, 2018, TEXT ONLY ORDER denying without prejudice Plaintiff's Motion [167] to Strike.

### C. Plaintiff's Second Motion [65] for Partial Summary Judgment as to negligence per se should be denied.

For the same reasons the Court has concluded that Plaintiff's negligence per se claim against Southern Recycling should be dismissed, Plaintiff's Second Motion [65] for Partial Summary Judgment as to the issue of negligence per se is not well taken and should be denied.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Defendant Southern Recycling, LLC's Motion [161] for Summary Judgment will be granted in part as to Plaintiff's negligence per se claim, and denied as to Plaintiff's remaining claims. Plaintiff Stone Mountain Access Systems, Inc.'s Second Motion [165] for Partial Summary Judgment will be denied.

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that Defendant Southern Recycling, LLC's Motion [161] for Summary Judgment is **GRANTED IN PART** as to Plaintiff Stone Mountain Access Systems, Inc.'s claim for negligence per se, and **DENIED IN PART** as to Plaintiff's remaining claims.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Stone Mountain Access Systems, Inc.'s negligence per se claim against Defendant Southern Recycling, LLC is **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Stone Mountain Access Systems, Inc.'s Second Motion [165] for Partial Summary Judgment is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 14th day of March, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE